UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA A. CARPENTER,

    Plaintiff,

vs.                                                        Case No.

HARTFORD LIFE AND ACCIDENT            HON.
INSURANCE COMPANY,

    Defendant.

---

Troy W. Haney (P48614)
HANEY LAW OFFICE, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503
Telephone: 616-235-2300
Facsimile: 616-459-0137
Email: thaney@troyhaneylaw.com

---

## **COMPLAINT**

Plaintiff, Melissa A. Carpenter, by her attorney, Troy W. Haney of Haney Law Office, P.C., and for her complaint against Defendant, Hartford Life and Accident Insurance Company, states as follows:

### **Nature of Action and Jurisdiction**

1. This is a civil complaint brought by Plaintiff, Melissa A. Carpenter ("Plaintiff"), under the Employee Retirement Income Security Act ("ERISA"), §502, 29 U.S.C. 1132, regarding breach of the terms of an employee benefit plan and breach of fiduciary duties, for the purpose of compelling Defendant to provide certain disability insurance benefits in amounts and at the coverage levels promised and for an accounting, recovery of damages,

    costs, and attorney fees incurred as a consequence of Defendant's breaches of its obligations and duties under ERISA as detailed herein.

2. This Court has subject jurisdiction over Plaintiff's claims pursuant to ERISA §502(e) and (f), 29 U.S.C. 1132(e) and (f) and 28 U.S.C. 1331.

3. Venue properly lies in this District pursuant to ERISA §502(e)(2), 29 U.S.C. 1132(e)(2).

## Parties and General Allegations

4. At all relevant times, Plaintiff was a participant, as defined by ERISA §3(7), 29 U.S.C. 1002(7), in "The Magna International of America Inc. Consolidated Welfare Benefit Plan" ("the Plan") provided by Magna International of America, Inc. ("Magna") to its eligible employees, including Plaintiff, administered and funded by an insurance policy issued by Defendant, Hartford Life and Accident Insurance Company ("Hartford") to Magna, for group disability benefits as group policy no. GLT-675859.

5. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. 1002(1), sponsored by Magna and funded by the above-referenced insurance policy issued by Hartford. As such, Hartford is the proper party to defend this matter and the sole entity responsible for the payment of claimed benefits set forth below.

6. At all relevant times, Defendant was the fiduciary of the Plan within the meaning of ERISA §3(21), 29 U.S.C. 1002(21), in that Defendant acted as a claims administrator and as a fiduciary for the Plan and exercised authority and control over the payment of long term disability "LTD" benefits, which are assets of the Plan. Pursuant to 29 C.F.R. §2560.503-1(h)(1), Defendant, therefore, functioned as an administrator for claims procedure purposes.

**Facts**

7. Plaintiff, Melissa A. Carpenter, became employed full-time by Magna as an "Operator A", (a.k.a. "Material Handler"), on January 29, 2003.

8. The Plaintiff's diagnosed medical conditions are as follows:

    - Chronic low back pain;
    - Chronic Obstructive Pulmonary Disease ("COPD");
    - Degeneration of lumbar intervertebral discs;
    - Diabetes Mellitus, Type II;
    - Emphysema;
    - Lumbar radiculopathy;
    - Migraines;
    - Multilevel lumbar spondylosis and facet arthropathy;
    - Partial ankylosis of the left SI joint;
    - Recurrent right L4-L5 disc herniation with neural foraminal narrowing;
    - Sciatica;
    - Spinal stenosis of lateral recess of lumbar spine.

9. As a result of these medical conditions, the Plaintiff experiences chronic and severe back pain, which also radiates down her right leg. The pain disrupts her sleep at night, which results in daytime fatigue. Due to her pain, she is also unable to sit, stand, or walk for any significant periods of time.

10. As a result of these various medical conditions and the overflow of symptomatology, Plaintiff's last day of work was on April 29, 2016.

11. In accordance with her employment contract, the Plaintiff applied for long term disability benefits through Hartford.

12. The definition of "Disability or Disabled" within the Plan is as follows:

    means You are prevented from performing one or more of the Essential Duties of:
    1) Your Occupation during the Elimination Period;

    2) Your Occupation, for the 12 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

    3) after that, Any Occupation.

13.     The definition of "Essential Duty" within the Plan is as follows:

    means a duty that:

    1) is substantial, not incidental;

    2) is fundamental or inherent to the occupation; and

    3) cannot be reasonably omitted or changed.

    Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty.

14.     The definition of "Your Occupation" within the Plan is as follows:

    means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

15.     The definition of "Any Occupation" within the Plan is as follows:

    means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:

    1)   The product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or

    2)   The Maximum Monthly Benefit.

16.     On June 9, 2016, the Plaintiff underwent surgery for a right L4-L5 hemilaminectomy and medial facetectomy with lateral recess decompression; right L4-L5 microdiscectomy; and right L5 foraminotomy.

17.     After a 180-day elimination period, the Plaintiff was approved for LTD benefits starting on November 7, 2016.

18.     On March 16, 2017, the Plaintiff underwent a second surgery for a repeat of the right L4-5 hemilaminectomy and medial facetectomy with lateral recess decompression; right L4-L5 microdiscectomy; and right L5 foraminotomy.

19. On November 7, 2017, after receiving 12 months of LTD benefits under the "Own Occupation" definition of disability, the Defendant continued to pay LTD benefits to the Plaintiff under the "Any Occupation" definition of disability.

20. On March 26, 2019, the Plaintiff underwent a third surgery, this time for a repeat of the L4-5 laminectomy and microdiscectomy on the right side, but also a L4-5 posterolateral pedicle screw fixation and fusion using DePuy Expedium pedicle screws and rods; posterolateral arthrodesis using infuse bone morphogenetic proteins, bone marrow aspirate, autologous and allograft bone, and bone marrow aspirate from the right iliac crest.

21. Unfortunately, even after three surgeries, and despite the continued use of narcotics, the Plaintiff continued to suffer from severe lower back pain and remained totally disabled from any occupation.

22. On June 13, 2019 the Plaintiff's attending physician, Dr. Paul Wagner, submitted an Attending Physician's Statement, which included the following restriction and limitations:

> **Sit:** Intermittently with standard breaks, for up to 1 hour at a time, for a total of 1 during an 8-hour period.
>
> **Stand:** Intermittently with standard breaks, for up to 1 hour at a time, for a total of 1 during an 8-hour period.
>
> **Walk:** Intermittently with standard breaks, for up to 1 hour at a time, for a total of 1 during an 8-hour period.
>
> **Bend at waist:** Never
>
> **Kneel/Crouch:** Never
>
> **Climb:** Never
>
> **Balance:** Occasionally, up to 2.5 hours.
>
> **Lift:** 0 lbs.
>
> **Fine Manipulation:** Occasionally, up to 2.5 hours.
>
> **Gross Manipulation:** Never
>
> **Reach above shoulder:** Never
>
> **Reach below shoulder:** Never
>
> **Expected duration of any restrictions or limitations:** Lifetime.

23. On October 25, 2019, after having paid LTD benefits for nearly three years, the Defendant terminated Plaintiff's LTD benefits based on the following decision:

> We have completed our review of your claim for benefits and have determined that you do not meet the policy definition of Disability beyond 10/24/19. Because of this, Long Term Disability (LTD) benefits are not payable to you as of 10/25/19. * * *
>
> The information in your file shows that you last worked for Magna International of America on 4/29/16 as an Operator A. You have received LTD benefits for the period 11/7/16 to 11/6/17 because you were unable to perform the duties of your occupation due to symptoms and impairment resulting from lumbar pain. You have received LTD benefits for the period 11/7/17 to 10/24/19 because you were unable to perform the duties of Any Occupation due to symptoms and impairment resulting from lumbar pain.
>
> The definition of disability in your contract changed as of 11/6/17. As of this day, you must be disabled from any occupation to continue to receive LTD benefits.
>
> When we investigated whether you could perform the duties of any occupation, we considered your prior education, training and experience. The information you provided to us shows that you have a high school education. * * *
>
> The medical information submitted by Dr. Wagner gave limitations as follows:
>
> - You are able to sit/stand/walk for 1 hour at a time each for 1 hour per day each
> - You can occasionally balance, drive and finger
> - You are not capable of bending, kneeling, climbing, crawling, reaching at any level, lifting/carrying or handling.
>
> Your claim file was referred to a Medical Clinic Case Manager who wrote to Dr. Wagner seeking clarification. Dr. Wagner responded on 9/12/19 stating you are disabled and you still have symptoms of fusion. * * *
>
> Based on this information, we have concluded that you are not prevented from performing the essential duties of Any Occupation. Because of this, you will not meet the policy definition of disability as of 10/25/19 and your LTD benefits will terminate on that date.

24. LTD benefits were terminated by the Defendant also based in part on a medical records review completed by Dr. Christopher Krause on September 18, 2019. However, it should be noted that Dr. Krause did not conduct a physical examination of the Plaintiff, nor did he speak with any of the Plaintiff's attending physicians. Dr. Krause's report stated in part:

> It is my opinion, after reviewing the records, that the claimant has met criteria for restrictions and limitations. She has had three surgical procedures in regard to chronic low back pain with two decompressions and a spinal fusion performed by attending physician Dr. Edgar. There were no complications for this procedure;

> however, the claimant had persistent pain. It is of my opinion that the claimant has the ability to work full time within these restrictions that follow. It is of my opinion that the claimant can sit for two hour durations for a total of six hours per eight-hour day with 20 minutes work breaks. It is of my opinion that the claimant can stand for one-hour durations for a total of two hours per eight-hour day, and the claimant can walk for one hour durations for a total of two hours per eight-hour day. It is my opinion that the claimant can lift/carry/push/pull up to 20 pounds on a constant basis at desk or waist level. The ability to use the upper extremities in a non-load bearing fashion to reach at desk level and perform fine and gross motor skills including keyboarding activities can be done on a constant basis without restriction. * * *
>
> It is of my opinion that the claimant has the capability of working an eight-hour day, 40 hour per work week, 5 days a week within these restrictions and limitations. * * *
>
> I believe that the claimant's expectation for improvement from this condition is poor. She has currently had three surgical procedures culminating in a lumbar fusion with continued radiculopathy and is on a chronic narcotic pain regimen.

25. In an October 16, 2019 addendum to his report, Dr. Krause added that the recommended 20-minute breaks were in fact "*a positional change break where the claimant can change positions for 20 minutes prior to resuming sitting again. This is not a 20-minute non-working break*".

26. The Defendant's decision to terminate LTD benefits was also based in part on an Employability Analysis Report completed on October 22, 2019 by Laura Tracy and Cyndi Miller, both of whom are Vocational Case Managers. Although the Employability Analysis Report concluded that there were a number of positions that the Plaintiff was capable of performing, it should be noted that their analysis was solely based on the restrictions and limitations provided by Dr. Krause, and that neither Ms. Tracy, Ms. Miller, nor Dr. Krause had conducted a physical examination of the Plaintiff.

27. On March 10, 2020 the undersigned appealed Defendant's decision to terminate the Plaintiff's LTD benefits, providing a multitude of medical records, as well as a signed Physician Statement of Disability from Dr. Paul Wagner, which stated in part:

> I am Melissa Carpenter's primary care physician providing general care and medical treatment. I also prescribe Ms. Carpenter's narcotic medication, i.e. Norco. * * *
>
> Ms. Carpenter continues to have ongoing complaints of severe back pain, which radiates down her right leg. Due to her pain, she is unable to sit, stand or walk for any significant periods of time. The pain disrupts her sleep at night, which results in daytime fatigue. * * *
>
> As Ms. Carpenter's longtime primary care physician, I have had the opportunity to examine her in a clinical setting on multiple occasions and it is my medical opinion that she is totally disabled from her own occupation as a 'Material Handler' and from any and all full-time occupations at this time.

28. The appeal submitted on March 10, 2020 also included a Vocational Rehabilitation Evaluation by Dr. Robert Ancell, who stated in his March 5, 2020 report in part as follows:

> Her current symptoms are low back pain, COPD, Type II diabetes, nerve pain in her right leg. She ambulates with the benefit of a cane. She was asked to rate her pain on a scale of zero to ten, with zero being no pain and ten being the worst she has ever experienced no matter what it was due to. She rated her pain on average at a seven with the pain medication. * * *
>
> On September 18, 2019, a letter was written to Hartford from Medical Consultants Network, a Dr. Krouse, an orthopedic surgeon, who reviewed the records. – It was his opinion that she met the criteria for restrictions and limitations. He noted that she had three surgical procedures in regard to her chronic pain. He indicated no complications even though she had been diagnosed with seroma and had been treated with Levaquin antibiotics. He noted that she had persistent pain. He felt that she could work full time with restrictions which would be sitting two hour durations for a period of six hours per eight hour shift with 20 minutes worth of breaks. – He felt that she could work a 40 hour week. All of these conclusions were made without the benefit of an [Functional Capacities Evaluation]. * * *
>
> From a vocational rehabilitation standpoint, Ms. Carpenter has sustained significant vocationally limiting problems. She has not been released by her surgeon and/or pain doctor. She has never had a Functional Capacities Evaluation. The restrictions opined by Dr. Krouse are his opinion and not based on any recognized testing of her physical ability in a work day. She has been referred for ongoing treatment. She has been awarded SSDI.
>
> It is my professional opinion that there are no jobs that she can perform. The basis of that opinion relates to her not being released to work by any of the doctors who know her the best. She remains on narcotic medication. She has a number of medical problems that cause a myriad of vocational limitations. Three back surgeries, chronic pain at a moderate level, COPD, DM, neuropathy and the need to ambulate with a cane.

29. On April 23, 2020, the Defendant advised that it was maintaining the decision to terminate the Plaintiff's LTD benefits. The decision stated in part,

> We understand that your client can experience symptoms related to the various conditions involved, mostly related to the lumbar spine, and that such symptoms may impair and/or interfere with her ability to perform certain tasks and/or activities from a physical standpoint; however, the evidence indicates that her residual level function is consistent with the ability to perform at least within the sedentary to light duty level with the restrictions and limitations indicated by Dr. Zhukalin as of 10/26/19 forward.
>
> Being diagnosed with a condition or multiple conditions and the need for ongoing treatment does not necessarily support inability to function or work during any particular period of time. The evidence must support functional impairment, restrictions and/or limitations that prevent your client from performing Any Occupation as of 10/26/19 forward. * * *
>
> Our appeal review has concluded that your client does not meet the Policy definition of Total Disability for Any Occupation as the medical evidence indicates that her residual level of function is consistent with full time sedentary to light duty capacity as of 10/26/19 forward, and several alternative gainful occupations have been identified that she could perform at such level of function. As such, the termination of your client's claim for benefits was appropriate and the claim remains closed.

30. The Defendant's decision to maintain the termination of LTD benefits was based in part on medical record reviews completed by two physicians, Dr. Mikhail Zhukalin and Dr. Wesley Chan, neither of which completed a physical examination of the Plaintiff. Additionally, the written reports created by these physicians were not provided to the Plaintiff, nor to her treating physicians, for an opportunity to review or respond to the reports, as is required by 29 C.F.R. § 2560.503-1(h)(4)(i)-(ii).

31. The Defendant's decision to uphold the denial of LTD benefits was also based in part on a second Employability Analysis Report completed by an unnamed individual who also did not physically examine the Plaintiff. The Defendant also failed to provide this report to the Plaintiff for review and response, as is required by 29 C.F.R. § 2560.503-1(h)(4)(i)-(ii).

32. In the April 23, 2020 final denial letter the Defendant also advised that the Plaintiff has the "*the right under Section 502(a) of ERISA to bring a civil action disputing this adverse benefit decision*".

33. As a result of her inability to return to work - in any capacity - the Plaintiff has been approved for Social Security Disability ("SSD") benefits.

34. As a result of the aforementioned wrongful action, Plaintiff's group waiver of life premium may have also been wrongfully denied by operation of the decision to terminate disability benefits.

**COUNT I**
**Claim for Benefits Pursuant to ERISA §502(a)(1)(B),**
**29 U.S.C. 1132(a)(1)(B) against Defendant**

35. Plaintiff incorporates paragraphs 1 through 34 above as if fully restated herein.

36. ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan and/or to clarify her rights to future benefits under the terms of a plan.

37. The failure to pay full disability benefits as described above are in direct violation of the terms of the Plan.

38. The Plan has failed to pay disability benefits to Plaintiff despite the recommendations of her physicians and disabling medical conditions.

39. The failure and refusal of the Plan to pay the benefits owed Plaintiff under the Plan is a breach of the terms and provisions of the Plan.

40. In addition, the Plan has failed to properly and thoroughly investigate Plaintiff's claim in the manner required by ERISA's fiduciary and claims procedure requirements.

41. The actions of the Plan have caused damage to Plaintiff in the form of the denial of long term disability benefits.

42. In addition, because the Plan denied the payment of Plaintiff's long term disability benefits, Plaintiff became ineligible for other benefits provided through her employment such as pension, medical benefits, and the waiver of group life insurance premiums.

### PRAYER FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief:

A. A declaratory judgment pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B) and 28 U.S.C. 2201, declaring that Plaintiff is entitled to the group employee benefits in the proper amounts as set forth in the Plan in effect at the time benefits became payable and that Defendant has violated the Plan and its fiduciary duties by failing to pay these benefits and honor the group waiver of life premium.

B. A full and accurate accounting by Defendant of all computations for Plaintiff's employee benefits, in sufficient detail so that Plaintiff may ascertain that her benefits are being paid in the proper amount.

C. An Order compelling Defendant to pay Plaintiff forthwith the full amount of employee benefits due her and to continue such payments for the period set forth in the Plan, including interest on all unpaid benefits.

D. An Order awarding reasonable attorney fees and costs pursuant to ERISA §502(g)(1), 29 U.S.C. 1132 (g)(1).

E. Such other relief as may be just and appropriate.

Dated:  June 5, 2020

/s/ Troy W. Haney
Troy W. Haney (P48614)
HANEY LAW OFFICE, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503